UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ROBERT J. DUNN,** | Civ. No. 19-18554 (KM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Robert Dunn brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Dunn seeks to reverse the finding of the Administrative Law Judge ("ALJ") that he has not met the Social Security Act's definition of disabled for the period beginning September 2, 2014, the alleged injury-onset date, through the date he will be last insured, September 30, 2022.

The issue presented is whether the decision of the ALJ to deny Dunn's application for DIB is supported by substantial evidence. For the reasons stated below, the decision of the ALJ is affirmed.

**A. Facts[1]**

Mr. Dunn is now 62 years old and has a high school diploma. (R. 32-34) Prior to his onset date, and since 2003, Mr. Dunn worked as a wheelchair lift installer. (R. 166)

---

[1]   Citations to the record are abbreviated as follows:

"DE" = Docket entry number in this action.

When Mr. Dunn was 56 years old, he sought the treatment of a neurologist, David S. Safar, M.D., for restlessness in his arms and legs. (R. 249-50) He saw Dr. Safar on three occasions in February and March 2014. (R. 246-251) Dr. Safar prescribed medication (Neupro) but this made Mr. Dunn dizzy, sleepy, and impulsive. (R. 246) Dr. Safar ultimately diagnosed Mr. Dunn with restless leg syndrome ("RLS") and peroneal neuropathy. (R. 246)

Six months later, on September 3, 2014, Mr. Dunn went to his primary care provider, Dr. George A. Guariglia, after jamming his thumb in a door. (R.404) He complained of thumb pain as well as back, neck, and shoulder pain and stiffness. (R. 405) He was seen again on September 23, 2014, by Dr. Guariglia who continued to diagnose Mr. Dunn with pain in his thumb joint and neck pain. (R. 401, 404) Ultimately, Mr. Dunn's injury required surgery on his thumb. On November 6, 2014, Mr. Dunn was seen by Dr. Guariglia to authorize him for thumb surgery. (R. 397-99) He continued to occasionally work to install chair lifts after the surgery from 2015-2107. (R. 33)

From December 20, 2014, to February 27, 2015, Mr. Dunn was seen three times by Dr. Guariglia to treat his RLS. (R. 387-93) He was prescribed Percocet to treat his symptoms.

In August 2015, Mr. Dunn presented to Dr. Guariglia complaining of back pain. (R. 385) Dr. Guariglia treated his back pain conservatively, encouraging Mr. Dunn to rest his back with no exercise or heavy lifting. (R. 385) Mr. Dunn appears to have consistently reported back pain, neck stiffness, and shoulder pain to Dr. Guariglia from September 2015 to January 2016. Dr. Guariglia diagnosed him with bilateral lower back pain, but the treatment

---

"R. _" = Administrative Record (DE 6) (The cited page numbers correspond to the number found in the bottom right corner of the page for all DE 6 attachments)

"PBr." = Plaintiff Dunn's Brief (DE 10)

"DBr." = Defendant Social Security Administration's Opposition Brief (DE 11)

"PRep." = Plaintiff's reply brief (DE 12).

2

remained conservative, with pain medication and rest. (R. 377-83) Mr. Dunn was referred to a pain management specialist as well. (R. 381)

On March 15, 2016, Mr. Dunn was seen by Dr. Alexander Hoffman for a medical consultation. (R. 272-74) Mr. Dunn reported that his RLS kept him awake often, that medication provided some relief, but that he still had periods where his RLS prevented him from sleeping for days at a time to the point where he was falling asleep while driving. (R. 272) Dr. Hoffman found that Mr. Dunn suffered from RLS, had some impairment in his grip strength in his left hand, and had a slightly diminished range of motion of the right shoulder. (R. 273)

Thereafter, over the course of the next two years from April 19, 2016 to May 24, 2018, Mr. Dunn continued to follow up with his primary care doctor, Dr. Guariglia, with complaints of RLS, neck and back pain, decreased movement, muscle spasms, and insomnia. (R. 350-61, 466-71) Mr. Dunn was prescribed, Mirapex, Flexeril, and Prednisone. (*Id.*) In addition, during this time Mr. Dunn was treated by Dr. Cyrus Vosough for pain management for his legs due to his RLS. (R. 276-79, 472-87) Dr. Vosough prescribed Oxycodone. (R. 281) Collectively, his medications left him feeling drowsy and fatigued, especially in the morning until the medications wore off. (R. 35, 44)

On January 8, 2018 and April 8, 2018, Mr. Dunn was seen by Dr. Jeffery Barasch for treatment of his RLS and for insomnia. (R. 443-52) He was diagnosed with RLS, daytime somnolence, obstructive sleep apnea, and insomnia. (R. 447) He was prescribed a number of medications to treat his RLS and insomnia. (R. 447, 552)

### 1. Disability Determination

On April 1, 2016, the State's physician, Dr. Howard Goldbas, completed a disability determination explanation. (R. 52-60) Dr. Goldbas's findings were "SOME TENDERNESS OVER THE L AND R FOOT. NO MAJOR RESTRICTION OF ROM. STRAIGHT LEG RAISING GOES TO ABOUT 75 ON THE R AND 80 ON L ABLE TO PUT WEIGHT ON 1 LEG AT A TIME." (R. 55) Mr. Dunn was also observed to have normal gait, did not use an assistive device, had poor heel

3

and toe walking ability, and had a weak left grip. (R. 58) Ultimately Dr. Goldbas determined that Mr. Dunn had light exertional limitations, including that he could occasionally life 20 pounds, frequently could lift 10 pounds, could stand, sit, or walk about 6 hours a day, could frequently climb stairs, balance, stoop kneel, crouch or crawl, but could not climb ladders. (R. 56-57) Mr. Dunn was found to have some limitation in left hand manipulation, but otherwise had no manipulative limitations. (R. 57). Based on his review, Dr. Goldbas found that Mr. Dunn had some limitations, but that these limitations would not prevent him from performing his past relevant work or working as a store manager. (R. 59)

Mr. Dunn sought reconsideration of these findings alleging that his RLS attacks had gotten worse on the right side of his body and his center back. (R. 62-71)

On October 13, 2016, John Vorhies conducted an examination and the assessment was largely the same as Dr. Goldbas's. He did find, however, that Mr. Dunn's exertional limitations were slightly improved, in that Mr. Dunn could occasionally lift 50 pounds and frequently could lift 25 pounds. (R.68)

On October 26, 2016, Dr. Paul Schraeder conducted an additional review and rendered the following assessment:

> Review of the MER and CE data supports that claimant has restless legs syndrome, had fusion of L great toe post trauma, had L4 partial laminectomy surgery in the past, had surgery on L thumb, and EMG data supporting Deep Peroneal nerve damage. The claimant was noted by the CE to have slight limitation of motion of L shoulder. In sum, the CE and MER data support that the light RFC of 4/1/16 is currently more reasonable than that dated 10/13/16 as there is no data supporting any improvement in function over all. The RFC of 4/1/16 is therefore affirmed.

(R. 66)

### B. Procedural History

On December 29, 2015, Mr. Dunn filed for DIB. (R. 140-41) The application was denied initially (R. 16, 52-60) and on rehearing. (R. 16, 62-71) On October 4, 2018 the ALJ held a hearing. (R. 16, 28-50)

On February 8, 2019, the ALJ issued a decision (R. 13-27) denying disability benefits on the ground that at step 1 Mr. Dunn was able to engage in substantial activity ("SGA") for the majority of the time from 2015-2017 and because for the remaining period through the date of the decision Mr. Dunn was still able to perform his past relevant work at Step 4. (*Id.*)

Mr. Dunn appealed. On August 2, 2019, the Appeals Council concluded that there were no grounds for review and affirmed the decision of the ALJ. (R. 1-6)

On September 30, 2019, Mr. Dunn filed this action seeking to overturn the ALJ's decision to deny benefits.

## I. DISCUSSION

### A. Standard of Review

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's

5

decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). A person is deemed unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B).

In reaching a decision, an ALJ is only required to addressed relevant examinations, opinion evidence, and the claimant's complaints. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (An ALJ is only required to "indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence. . . . [T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.").

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000).

### B.  The Social Security Act and the Five-Step Process

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant

is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

>**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If yes, the claimant is not disabled. If not, move to step two.
>
>**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. If the claimant has a severe impairment, move to step three.
>
>**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
>**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If yes, the claimant is not disabled. If not, move to step five.
>
>**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

A claimant's RFC is not a medical diagnosis as such. *See Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5P, 1996 WL

374183 at *2 (S.S.A. July 2, 1996). Instead, it is an administrative finding reserved for the Commissioner. *Id.*; *see also Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 87 (3d Cir. 2015) ("The ultimate legal determination of disability is reserved for the Commissioner."); *see also Robinson v. Colvin*, 137 F. Supp. 3d 630, 644 (D. Del. 2015) ("[O]pinions that a claimant is 'disabled' or 'unable to work' are not medical opinions and are not given special significance because opinions as to whether or not a claimant is disabled are reserved for the Commissioner."); 20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

An ALJ is not bound by the capacity determinations of a treating physician. *See Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). Indeed, the determination of disability is legal in nature, and is reserved for the ALJ within the constraints of the statute and regulations. *See Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("[T]he ALJ . . . is not required to seek a separate expert medical opinion."); *Glass v. Colvin*, No. 14-237, 2015 WL 5732175 at *1 (W.D. Pa. Sept. 30, 2015) ("[T]he ALJ is not limited to choosing between competing opinions in the record . . . .").

Medical opinions need be credited by the ALJ only if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). An ALJ may, if appropriate, elect to disregard a medical opinion entirely: "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); *see also Irey v. Colvin*, No. 13-7423, 2016 WL 337019 at *4 (E.D. Pa. Jan. 27, 2016) ("[T]he ALJ is not bound by the opinion of any one physician[] and can reject an opinion if there is a lack of support or a finding of contradictory evidence in the record.").

### C. The ALJ's Decision

On February 8, 2019, the ALJ issued a decision finding that Mr. Dunn was not disabled within the meaning of the Social Security Act. (R. 23) The ALJ determined that Mr. Dunn had two severe impairments: RLS and a history of left hand surgery. (R. 19) But she also determined that, given the medical record before her, Mr. Dunn's impairments failed to demonstrate significant and persistent disturbances of his movement such that he was prevented from returning to his relevant past employment. (R. 19-23)

The ALJ followed the five-step process outlined above to determine that Dunn was not disabled. The ALJ's findings are summarized as follows:

**Step One:** At step one, the ALJ determined that Dunn had engaged in SGA in the 1st, 2nd, and 3rd quarters of 2015, 2016, and 2017. However he had not engaged in SGA for a continuous 12-month period in 2018 or 2019. (R. 18)

**Step Two:** At step two, the ALJ determined that Dunn had the following severe impairments: RLS and a history of left hand surgery. (R. 19)

**Step Three:** At step three, the ALJ determined that Dunn did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 19)

**Step Four:** At step four, the ALJ determined that based on Mr. Dunn's RFC, he could perform his past relevant work (R. 19-22). For example, Mr. Dunn previously worked as an electronics mechanic, which was performed at a medium level of exertion, as defined in 20 C.F.R. 404.1565 and 404.1567. (*Id.*)

Accordingly, the ALJ did not go on to Step Five and determined instead that Mr. Dunn was not disabled, as defined by the Social Security Act, at any point from September 2, 2014 to February 8, 2019. (R. 21-22)

### D. Analysis of Mr. Dunn's Appeal

Mr. Dunn presents several arguments on appeal:

1. The ALJ's Step 1 evaluation was not supported by substantial evidence because she miscalculated Mr. Dunn's SGA in 2015, 2016, and 2017.

9

2. The ALJ failed to explain her reasoning when rejecting more restrictive evidence as to Mr. Dunn's ability to work and failed to appropriately apply Mr. Dunn's relevant work experience.
3. The ALJ failed to identify appropriate functional limitations in the RFC.
4. The ALJ failed to credit Mr. Dunn's subjective testimony concerning his symptoms.

I address the merits of these arguments below.

### 1. The ALJ's Step One Evaluation

Here the ALJ found that Dunn's work constituted SGA at the first step of the sequential analysis for the 1st, 2nd, and 3rd quarters of 2015, 2016, and 2017. (R. 18) Mr. Dunn claims these findings are unsupported and proffers the following charts that summarize the evidence in the record concerning Mr. Dunn's certified earnings:

| Year | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter | Annual Total |
|---|---|---|---|---|---|
| 2015 | N/A | N/A | N/A | N/A | $4,185.00 |
| 2016 | $900 | $3072 | $4431 | $3869 | $15,688.00[2] |
| 2017 | $2572 | $4359 | $550 | $0 | $7,480.75 |

(R. 146-48) Mr. Dunn then compared his average monthly earnings in each of these quarters to the thresholds established by the Social Security Administration when determining if someone has engaged in SGA:

| Year | Plaintiff's Monthly Average Earning 1st Quarter | Plaintiff's Monthly Average Earning 2nd Quarter | Plaintiff's Monthly Average Earning 3rd Quarter | Plaintiff's Monthly Average Earning 4th Quarter | SGA Monthly Threshold[3] |
|---|---|---|---|---|---|
| 2015 | 0 | 0 | 0 | 0 | $1090 |
| 2016 | $300 | $1024 | **$1477** | **$1289.67** | $1130 |

---

[2] I note that this figure appears to be incorrect based on the quarterly earnings listed in the record (*See* R. 147-48 (breaking down wages paid by quarter)). By my calculations, the sum total of Mr. Dunn's quarterly earnings for 2016 is $12,272. Nevertheless, Mr. Dunn's yearly earnings for 2016 are listed as $15,688 in the record. (R. 152)

[3] These figures are available here: https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015.

10

| 2017 | $857.33 | **$1453** | $183.33 | $0 | $1170 |

The figures in bold represent quarters where Mr. Dunn admits that his wages were above the SGA threshold. But, Mr. Dunn further contends that even these three quarters are excused because the ALJ failed to test for an unsuccessful work attempt as outlined in 20 C.F.R. § 404.1574(c)(1).

Defendant appears to concede that some of these figures were calculated incorrectly, but argues that this error was harmless. (DBr. at 11)

I agree. The ALJ did not deny the claim at step one. Rather, she found that Mr. Dunn had periods in 2018 and 2019 where he was not substantially gainfully employed for a period of 12 months and continued with the analysis. Mr. Dunn does not suggest how the outcome would have been different if the ALJ had performed the calculations without error. In short, he makes a sterile claim of error, but offers no explanation of how further analysis could have changed the outcome of his claim. *Holloman v. Comm'r Soc. Sec.*, 639 Fed.Appx. 810, 814 (3d Cir. 2016). "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Id.*; *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

As outlined further below, given that the ALJ proceeded to continue through the sequential analysis, any error at step one was harmless. *See Terrell v. Colvin*, Civ. No.14-2304, 2015 WL 5737110, at * 4 (N.D. Ill. Sept. 29, 2015) (finding harmless error where the ALJ erred at step one but proceeded with sequential analysis).

As a result, I find no basis for remand based on any error in the ALJ's Step 1 analysis.

### 2. The ALJ's Step Two Evaluation

As part of his contention that the ALJ failed to account for his limitations, Mr. Dunn argues that the ALJ failed to consider Mr. Dunn's spinal impairments at step two. Mr. Dunn notes that after his hand injury, he experienced pain in his neck, shoulder, and back, had decreased range of

motion, and had general stiffness. (Pl. Br. at 28) This evidence, says Dunn, was overlooked by the ALJ.

Mr. Dunn's arguments regarding the ALJ's step-two analysis are unavailing. First, the claimant has the burden of proof at step two to prove that a disability is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. § 404.1512(a) (stating that the claimant must furnish medical and other evidence that the adjudicator can use to reach conclusions about the claimant's medical impairments). Mr. Dunn did not furnish or point to evidence to show that his back pain is severe—i.e., that it "significantly limits [his] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(c). Mr. Dunn has a history of lumbar spine surgery, and the record demonstrates that he previously had a partial laminectomy. However, there is little evidence establishing that Mr. Dunn was suffering from severe impairments due to back pain from 2014 to 2018. For example, Dr. Guariglia did observe occasional decreased range in motion and occasional pain, but he nevertheless frequently and often simultaneously observed that Mr. Dunn's spine was normal. (*See, e.g.*, R. 377-78, 385, 388, 396, 399, 403, 406, 409, 411-12, 416, 418-19, 422, 426,428, 470) Moreover, when Mr. Dunn did present with back pain, he was given conservative treatment, he was told to rest and take pain medication. (R. 377-78, 385). These impairments thus do not appear to significantly limit Mr. Dunn's basic work activities and Mr. Dunn does not meet his burden of proving that these impairments are severe. *A fortiori,* there was substantial evidence to support the ALJ's conclusion to that effect.

Second, even if the ALJ's determination that Mr. Dunn's back impairments are not severe was an error, it would be a harmless error. The ALJ nevertheless erred on the side of leniency in considering the back impairments later on in her analysis. When an ALJ finds that the claimant has at least one severe impairment, omission of another at step two may be harmless error as long as the impairment is considered regarding the RFC or would not affect the

outcome of the case. *Salles v. Comm'r of Soc. Sec.*, 229 Fed.Appx. 140, 145 n.2 (3d Cir. 2007); *see Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005). Any error here would be harmless because the medical record does not indicate that the omitted impairment impacts his ability to perform basic work functions and because the ALJ discussed the impairment when considering the RFC in any event.

In particular, the ALJ addressed Ms. Dunn's history of pain in his neck and lower back:

> The claimant's physical conditions of pain in the neck and lower back, and his history of status-post laminectomy does not indicate any complications or ongoing, limiting physical symptoms related to these conditions. While some examinations showed abnormal results, more often than not, the results of his musculoskeletal examinations were normal and he was described as neurologically intact (Exhibits 5F, 7F, 8F and 1OF). Although the claimant complained of chronic neck and back pain, the medical record does not contain any diagnostic studies or testing that defines the anatomical or physiological source of the claimant alleged neck and lower back pain. Therefore, based on the medical evidence, I find these impairments are non-severe.

(R. 19) There is thus substantial support for the ALJ's finding that Mr. Dunn's spine pain was not severe.

### 3. The ALJ's Step Four Evaluation

Dunn's remaining arguments for why substantial evidence is lacking for the ALJ's findings each go to the merits of the ALJ's analysis at Step 4. Dunn contends: (1) the ALJ failed to explain her reasoning when rejecting more restrictive evidence as to Mr. Dunn's ability to work and failed to appropriately apply Mr. Dunn's relevant work experience; (2) the ALJ failed to identify appropriate functional limitations in the RFC; and (3) the ALJ failed to credit Mr. Dunn's subjective testimony concerning his symptoms.

#### i. The ALJ's Assessment of Conflicting medical evidence

Mr. Dunn asserts that the ALJ erred by failing to resolve a conflict between the state's own medical examiners. (Pl. Br. at 21) The state's initial

examiner found that Mr. Dunn could perform light work, occasionally lifting 20 pounds, frequently lifting 10 pounds, could stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday. (R. 56) On reconsideration, Dr. Vorhies, found that Mr. Dunn could occasionally lift and carry 50 pounds, frequently 25 pounds, stand and/or walk for 6 hours, and sit for 6 hours in an 8-hour workday (R. 68) Dr. Schraeder then conducted an additional review 13 days later and determined that the light RFC was more appropriate than the medium. (R. 66) Mr. Dunn contends that the ALJ failed to outline her reasons for rejecting these more restrictive opinions. (Pl. Br. 22-25)

As noted, *supra*, a claimant's RFC is an administrative finding reserved for the Commissioner. *Pintal*, 602 F. App'x at 87 ("The ultimate legal determination of disability is reserved for the Commissioner."); *see also Robinson* 137 F. Supp. 3d at 644 (D. Del. 2015) ("[O]pinions that a claimant is 'disabled' or 'unable to work' are not medical opinions and are not given special significance because opinions as to whether or not a claimant is disabled are reserved for the Commissioner."); 20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

But the ALJ must still outline the basis for her decision. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."); *Burnett*, 220 F.3d at 119 (3d Cir. 2000) (stating "this Court requires the ALJ to set forth the reasons for his decision" and remanding because "the ALJ merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment, without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning") (citing *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996)); *Logan v. Astrue*, CIV.A. 07–1472, 2008 WL 4279820 (W.D. Pa. Sept. 16, 2008) ("an ALJ may not capriciously disregard

14

competent medical evidence, however, an ALJ is permitted to discredit medical evidence that conflicts with other evidence in the record, provided that the ALJ provides his or her reasons for doing so").

Mr. Dunn contends that the ALJ does not explain how she resolved this conflicting evidence. But the ALJ does explain. She states that her determination that a medium RFC was warranted was based on Dr. Vosough's determinations and a June 6, 2016 report "of the claimant's bilateral upper and lower extremities revealed 5/5 motor strength with no sensory deficits and reflexes were +2/4 throughout." (R. 21) She summarized her review of the medical records and found that generally, Mr. Dunn's impairments resulted in some limitations, but that overall the record before her "shows his condition is stable with treatment and medications" (R.22) and that Mr. Dunn's conditions had been improving into 2018 such that he was not having any trouble walking. (*Id.*) Mr. Dunn, she found, even reported that he was more functional and denied any fatigue. (*Id.*) Finally, the ALJ stated that she gave great weight to the DDS physicians who found Mr. Dunn capable of medium work with some limitations.

Accordingly, I find that the ALJ properly considered this conflicting evidence and weighed it in her RFC determinations.

### ii.   Appropriate functional limitations

Mr. Dunn contends that the ALJ failed to account for his mental limitations of insomnia, fatigue, and medicinal side effects. (Pl. Br. at ))

The ALJ findings, however, do account for these limitations. The ALJ noted Dr. Vosough's impressions that Mr. Dunn had complaints of fatigue, insomnia, and daytime drowsiness. (R. 21) But the ALJ also noted additional evidence which suggested that Mr. Dunn had no sensory impairments. (R. 21 ("report of a physical examination from June 6, 2016, of the claimant's bilateral upper and lower extremities revealed 5/5 motor strength with no sensory deficits and reflexes were +2/4 throughout (Exhibits 3F, SF, 7F, 8F and l0F).") Moreover, the ALJ reviewed more current medical records that indicated that Mr. Dunn's conditions were improving with treatment. The ALJ went on to

15

state that "On February 16, 2018, the claimant reported that he was generally able to perform his usual activities, that he had good exercise tolerance, and that he enjoys a good general state of health. He denied any fatigue. He denied any weakness or generalized pain. While some examinations have noted that the claimant reported some pain, many reports stated that the claimant was neurologically intact." (R. 22)

Accordingly, the ALJ assessed whether Mr. Dunn had any cognitive impairments and weighed these symptoms appropriately when assessing Mr. Dunn's RFC. (R. 21-23). This determination is supported by substantial evidence.

### iii. Subjective complaints of pain

Mr. Dunn argues that the ALJ erred by not fully crediting his subjective complaints of pain. (DE 30–33). The ALJ noted Mr. Dunn's statements that "that he does not sleep at night," suffers from fatigue and lack of concentration, and that his medication "knocks him out in the morning." (R.21) The ALJ also noted that Mr. Dunn estimated that he could walk only two blocks, stand for a half an hour at a time, and lift two gallons of milk. (*Id.*) He testified that he gets only three hours of sleep a night, usually waking around 3:00 a.m. or 4:00 a.m., but is unable to do anything till his medication wears off around 12:00 p.m. or 1:00 p.m. (*Id.*) Nevertheless, Mr. Dunn also reported that medications address his pain. (*Id.*) For this reason, among others, the ALJ found that his subjective complaints of disabling pain were only partially credible.

Ultimately, "[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 Fed.Appx. 678, 681 (3d Cir. 2015) (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Credibility determinations are entitled to "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 Fed.Appx. 183, 188–89 (3d Cir. 2007) (citing *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)). What is required overall is that the ALJ give the claimant's testimony "serious

16

consideration," state her reasons for accepting or discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 Fed.Appx. 725, 729 (3d Cir. 2003). Where this has been done, a reviewing court will defer to the ALJ's credibility determination.

Given conflicting evidence, the ALJ was entitled to conclude that Mr. Dunn was overstating the extent of his pain symptoms.

## II. CONCLUSION

For the foregoing reasons, the decision of the ALJ is **affirmed**.

Dated: August 24, 2020

/s/ Kevin McNulty

**Hon. Kevin McNulty
United States District Judge**

17